**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

United Steel, Paper and Forestry, Rubber,
Manufacturing, Energy, Allied Industrial
and Service Workers International Union,
AFL-CIO-CLC, and its Local Union 1095,

    Plaintiffs,       **MEMORANDUM OPINION
                      AND ORDER**
 v.                Civil No. 07-4731 ADM/RLE

Ainsworth Engineered (USA), LLC, a
foreign limited liability company,

    Defendant.

_____

Scott A. Higbee, Esq., Peterson, Engberg & Peterson, Minneapolis, MN, argued on behalf of Plaintiffs.

Douglas R. Christensen, Dorsey & Whitney, LLP, Minneapolis, MN, argued on behalf of Defendant.

_____

## I. INTRODUCTION

On September 25, 2008, the undersigned United States District Judge heard oral argument on the Cross-Motions for Summary Judgment of Defendant Ainsworth Engineered (USA), LLC, a foreign limited liability company ("Ainsworth") [Docket No. 18] and Plaintiffs United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO-CLC, and its Local Union 1095 (collectively "USW") [Docket No. 23]. USW claims that Ainsworth violated the Worker Adjustment and Retraining Notification Act ("WARN Act"), 29 U.S.C. §§ 2101-2109, by failing to give timely notice of the September 22, 2006 layoff at its facility in Grand Rapids, Minnesota. For the reasons set forth below, Ainsworth's Motion is granted and USW's Motion is denied.

## II. BACKGROUND[1]

Ainsworth is a Canadian company that owns and operates a facility in Grand Rapids, Minnesota for the production of oriented strand board, a lumber product commonly used in new-home construction. Compl. [Docket No. 1] ¶¶ 7-8; Answer [Docket No. 2] ¶¶ 7-8; Def.'s Stmt. of the Case [Docket No. 4] at 1. USW is the exclusive collective bargaining representative for the 130 employees at the Grand Rapids facility covered by the collective bargaining agreement. Compl. ¶ 5; Def.'s Stmt. of the Case at 2.

On September 22, 2006, Ainsworth announced that due to poor market prices, high costs of production, and slowing of new-home construction, the 130 employees represented by USW would immediately be laid off. Compl. ¶ 10, Ex. A; Answer ¶ 10. Ainsworth did not provide sixty days' advance notice of the layoff.[2] Def.'s Stmt. of the Case at 2. At various times over the course of the next several months, some employees were recalled by Ainsworth to work for brief periods. Compl. ¶ 14; Answer ¶ 13. Nine employees—Scott Broberg, Danny Dagle, Robert Grussendorg, Randy Hemphill, Clarence Hopkins, Daniel Oberton, Michael Smith, Michael Waterbury, and Larry Wirta ("the nine primary claimants")—were recalled to work for a period in October 2006. Christensen Aff. [Docket No. 21], Ex. B at 1. Michael Smith worked

---

[1] On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). As both parties have moved for summary judgment, any disputed facts are noted.

[2] The WARN Act generally requires certain employers to provide at least sixty days' notice of a mass layoff to employees, the employees' bargaining representatives, and certain government officials. 29 U.S.C. § 2102(a). The parties agree that Ainsworth is an "employer" and that the September 22, 2006 layoff qualifies as a "mass layoff," as those terms are defined in the WARN Act. See Def.'s Mem. in Supp. of Mot. for Summ. J. [Docket No. 20] at 3 n.1; Pls.' Mem. in Supp. of Mot. for Summ. J. [Docket No. 25] at 6.

a total of six days between October 4 and October 13 before going on paid sickness and accident leave beginning on October 16, while the other eight employees worked seven days between October 9 and October 17. Id. at 2-10.

At some point, Ainsworth determined the layoff would exceed six months, and, on March 21, 2007, Ainsworth provided a "WARN notice" that identified 103 employees who would be paid a lump-sum equivalent to the sixty days' wages and benefits in lieu of the sixty days' advance notice that had not been given when the layoff began.[3]  Compl. ¶ 15, Ex. B; Answer ¶ 14. On April 16, 2007, Ainsworth provided another "WARN notice," identifying ten additional employees[4] who had been recalled and then laid off again on October 18, 2006, and who would also receive a WARN payment calculated like that of the previously identified 103 employees. Compl. ¶ 16, Ex. C; Answer ¶ 15; Christensen Aff., Ex. A at 15.

Also in April 2007, Ainsworth recalled fifteen employees back to work, including the nine primary claimants. Christensen Aff., Ex. A at 16. Shortly after these fifteen employees returned to work, Ainsworth provided a "WARN notice" dated April 19, 2007, informing them that they would be laid off on June 18, 2007, for an indefinite period expected to exceed six months. Christensen Aff., Ex. A at 16-17. Of these fifteen employees, the parties agree that one

---

[3] An employer's liability for damages for a violation of the WARN Act's notice requirement is measured by the wages the employees would have received had the layoff been deferred until the end of the sixty days, less any wages or fringe benefits received from the violating employer during that period. 29 U.S.C. § 2104(a). The parties therefore agree that an employer can eliminate liability for such damages by compensating employees for those amounts that they would be entitled to for the violation of the notice requirement. See Breedlove v. Earthgrains Baking Cos., Inc., 140 F.3d 797, 801 (8th Cir. 1998).

[4] Ainsworth later discovered that another employee should have been paid along with the ten employees identified in the April 16, 2007 WARN notice, and Ainsworth issued such a payment to that employee in July 2007. Christensen Aff., Ex. A at 18-19.

3

does not qualify as an "aggrieved employee" and therefore is not entitled to a WARN payment. Compl. ¶ 19; Answer ¶ 18. Two of the employees previously received a WARN payment pursuant to the March 21, 2007 notice, and three others were subsequently issued a WARN payment in August 2007.[5] Def.'s Mem in Supp. of Mot. for Summ. J. at 12; Pls.' Mem. in Supp. of Mot. for Summ. J. at 4; Higbee Aff [Docket No. 26] Ex. D at 17. Ainsworth notified USW in August 2007 that it did not intend to issue WARN payments to the remaining nine employees; these individuals are the nine primary claimants in this case.[6] Compl. ¶ 21; Answer ¶ 20.

### III. DISCUSSION

**A.    Standard of Review**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465,

---

[5] Ainsworth maintains that these three employees were not entitled to WARN payments but that the decision was made to "err on the side of caution by making WARN payments to them on the ground[] that there was a good faith argument" that they were entitled to WARN payments. Def.'s Mem in Supp. of Mot. for Summ. J. at 12.

[6] As indicated previously, of the 130 employees laid off in September 2006, 103 received payments under the March 2007 notice, eleven were paid under the April 2007 notice, and three others were paid in August 2007. Thus, a total of 117 employees received WARN payments, leaving thirteen employees who have not. There is no claim for WARN payments for the four employees who are not among the nine primary claimants here.

470 (8th Cir. 1995). The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**B.      The Nine Primary Claimants**

The WARN Act requires certain employers to provide its employees, the employees' bargaining representatives, and government officials sixty days' notice of a "mass layoff," which is defined as a "reduction in force" that results in an "employment loss" for at least thirty-three percent of the employees (provided that such a percentage equals at least fifty employees). 29 U.S.C. §§ 2101(a)(3) and 2102(a). An employer who fails to provide the required notice is liable for a maximum of sixty days' back pay and fringe benefits to each aggrieved employee who suffers an "employment loss" as a result of the layoff. 29 U.S.C. § 2104(a)(1). Thus, an employer's liability for failing to provide timely notice is limited to only those employees who suffered an "employment loss," which is defined as "(A) an employment termination, other than a discharge for cause, voluntary departure, or retirement, (B) a layoff exceeding 6 months, or (C) a reduction in hours of work of more than 50 percent during each month of any 6-month period." 29 U.S.C. § 2101(a)(6). At issue here is whether the nine primary claimants suffered such a qualifying employment loss. USW argues their employment loss falls under either category (B) or (C). The Court will address each in turn.

**1.      Layoff Exceeding Six Months**

Ainsworth's argument hinges on the recall to work of the nine primary claimants for a

period of days ending on October 17, 2006.[7] Ainsworth contends that the duration of the layoff must be measured from this date and, therefore, because the nine primary claimants were recalled on April 16, 2007, they did not suffer a layoff that exceeded six months. USW responds that the duration of the layoff should be measured from September 22, 2006, and that the brief recall during October "is insufficient to conclude that these employees were not subject to a layoff of more than six months." Pls.' Responsive Mem. in Opposition to Def.'s Mot. for Summ. J. at 7. USW argues that if liability under the WARN Act can be avoided by simply recalling employees for a brief period of time, the protections guaranteed by the WARN Act may be effectively thwarted. The issue of how to measure the duration of a layoff under these circumstances has not been addressed by the Eighth Circuit, but courts in other circuits have considered similar fact patterns.

Oil, Chemical & Atomic Workers International Union, Local 7-515, AFL-CIO v. American Home Products Corp. ("OCAW") involved an employer who laid off employees in November 1990 and then recalled them in February and March 1991 before laying them off for a final time in April 1991. 790 F. Supp. 1441, 1447 (N.D. Ind. 1992). The question before the court was whether those employees suffered an employment loss under category (B)—that is, a layoff exceeding six months. See id. The union argued that the February and March recalls were a way to circumvent the WARN Act and, in support, introduced an exhibit showing that

---

[7] Unlike the other eight primary claimants, Michael Smith did not work on October 16 and 17 because he had gone on paid sickness and accident leave beginning on October 16. It appears, however, that the parties are in agreement that the analysis of whether Michael Smith suffered an employment loss is no different from the analysis of the other eight primary claimants. See Christensen Aff. Ex. B at 10-11; Pls.' Mem. in Supp. of Mot. for Summ. J. at 14-15; Def.'s Mem. in Opposition to Pls.' Mot. for Summ. J. [Docket No. 32] at 18; Pls.' Responsive Mem. in Opposition to Def.'s Mot. for Summ. J. [Docket No. 29] at 7-8.

one of the reasons for the recall was to establish the employees' layoff status for purposes of the already-commenced lawsuit under the WARN Act. Id. The court rejected the union's argument, explaining that:

> Congress did not draft the WARN Act so as to make any employer's stumble an irrevocable fall. Nothing in the Act or accompanying regulations forbids an employer that prematurely terminated employees from recalling those employees to assure their receipt of sufficient notice. Bringing someone back to work so as to comply with the WARN Act is not evasion of the Act; it is compliance.

Id. The court ultimately concluded that because of the recalls, the layoff did not exceed six months, the employees did not suffer an employment loss, and thus, "their layoffs establish no right to a remedy under the WARN Act." Id. at 1447-48.

The court in Office & Professional Employees International Union, AFL-CIO v. Sea-Land Services, Inc. was faced with a similar question of how to treat a layoff followed by a recall and then another layoff in determining whether an employment loss had occurred. See No. 90 Civ. 2559, 1991 WL 136036, at *4 (S.D.N.Y. July 18, 1991). There, employees had been laid off in March 1990 and then recalled to temporary jobs before eventually being laid off again for a period of time that exceeded six months. Id. The union argued that the recalls should be ignored and that the court should look to the date of the original layoff in March 1990 in determining whether an employment loss occurred. Id. at *5. The court disagreed, finding no authority to support the union's argument and stating it was contradicted by commentary from the Department of Labor ("DOL") explaining the definition of employment loss:

> "Another commenter suggested that the regulations should be clarified to state whether a layoff, recall and layoff of a worker within a 30-day period constitutes one or two employment losses. Since WARN defines employment loss as a layoff exceeding 6 months in duration, a layoff and recall which occurred within a 30-day period

>cannot be an employment loss.  <u>Thus, only the second layoff may count, if it will be of sufficient duration</u>."

<u>Id.</u> (Citing DOL Analysis, 54 Fed. Reg. 16,049 (Apr. 20, 1989)) (emphasis added).

The Court is persuaded by the reasoning of the <u>OCAW</u> and <u>Sea-Land</u> courts.  The DOL analysis clarifies that when, as here, an employee is laid off, recalled within thirty days, and then laid off again, only the second layoff may be considered in determining whether the layoff was of sufficient duration (i.e., exceeding six months) to qualify as an employment loss under § 2101(a)(6)(B).  <u>See</u> DOL Analysis, 54 Fed. Reg. 16,049 (Apr. 20, 1989).   USW argues, however, that unlike the recalls in <u>OCAW</u> and <u>Sea-Land</u>, the shortest of which was at least one month, the October recalls here lasted only seven days (six days in the case of Michael Smith) and that such short-duration recalls should be disregarded for purposes of determining whether the layoff exceeded six months.  <u>See</u> <u>OCAW</u>, 790 F. Supp. at 1447; <u>Sea-land</u>, 1991 WL 136036, at *5.

Indeed, there is support for the proposition that a brief recall might be ignored in certain situations and that the duration of the layoff may be measured from the original layoff.  The court in <u>OCAW</u> commented that a recall lasting only one day might be particularly suspect and justify ignoring the recall for purposes of § 2101(a)(6)(B).  <u>See</u> 790 F. Supp. at 1447.  Another court has suggested that a brief recall might be ignored when it appears that the employer implemented the recall without a business purpose but rather to evade the WARN Act.  <u>See</u> <u>Cruz v. Robert Abbey, Inc.</u>, No. CV 89-4240 ADS, 1990 WL 84349, at *3-4 (E.D.N.Y. June 12, 1990) (denying summary judgment on the issue of whether an employment loss had occurred under § 2101(a)(6)(B) when fact issues remained as to whether the employer implemented a brief recall for the purpose evading the WARN Act).  Citing <u>Cruz</u>, the court in <u>Sea-Land</u> also recognized

8

that a sufficiently brief recall might be ignored if done for the purpose of attempting to evade the WARN Act but concluded that "even assuming that WARN liability can attach where an employer has temporarily recalled employees for a brief tenure without business purpose, but only in an attempt to evade the statute, . . . there is no indication of such evasion here." 1991 WL 136036, at *5 (citation omitted). The court explained that the union "has not come forward with any evidence that [the employer's] recalls were an attempt to evade WARN's requirements or that the recalls were so transitory that they were not in good faith or should be disregarded." Id. The same is true in this case. Although USW argues generally that employers should not be allowed to evade the WARN Act by simply recalling employees who, but for a brief recall, suffered what is in effect an employment loss, there have been no allegations that (1) Ainsworth did not have a business reason for the October recalls, (2) there was not actual, legitimate work that needed to be done,[8] or (3) Ainsworth otherwise acted in bad faith. The Court agrees there are situations in which a recall should be disregarded because it was too brief and was implemented with the purpose of attempting to evade the WARN Act, but that is not the case here.

Although the nine primary claimants were laid off on September 22, 2006, they were recalled for six or seven days of work in October 2006. The period of time between the end of the October 2006 recall and the April 2007 recall did not exceed six months, and, therefore, the nine primary claimants did not suffer an employment loss under § 2101(a)(6)(B).

### 2. Reduction in Hours of More than Fifty Percent

---

[8] To the contrary, there is evidence that the employees were recalled to perform necessary equipment maintenance and to winterize the facility. Christensen Aff., Ex. A at 8-9.

An employment loss also occurs under the WARN Act when an employee suffers "a reduction in hours of work of more than 50 percent during each month of any 6-month period." 29 U.S.C. § 2101(a)(6)(C).  USW argues that the nine primary claimants suffered this type of employment loss because they experienced a more-than-fifty-percent reduction in work hours in each month of the six-month period beginning on September 22, 2006.  Ainsworth responds that the September 22, 2006 event was a layoff, not a reduction in hours.  Accordingly, the question of whether the nine primary claimants suffered an employment loss must be analyzed solely under category (B) for layoffs and category (C) for reductions in hours is simply inapplicable.

"The reduction in hours language of the definition of employment loss is not explained in the legislative history [of the WARN Act]."  DOL Analysis, 54 Fed. Reg. 16,049 (Apr. 20, 1989).  In addition, it appears that no court has confronted whether a category (C) employment loss can be found where the employer clearly announces a layoff (not a reduction in hours) is being implemented.  After considering the parties argument and reviewing the statute, the Court concludes that because the circumstances here concern a layoff, not a reduction in hours, the question of whether the nine primary claimants suffered an employment loss must be decided by looking solely to category (B).

The Court agrees with Ainsworth that reading the statute in the manner that USW urges (that is, to allow for an employment loss on the basis of a reduction in hours even though the employer explicitly announced a layoff rather than a reduction in hours) would render category (B) nugatory.  It is a fundamental principle of statutory construction that whenever possible, a court should construe a statute in a way that gives full effect to every clause and word of the statute.  United States v. Talley, 16 F.3d 972, 975 (8th Cir. 1994).  As a practical matter, when

an employee is laid off for a period in excess of six months, he experiences a one-hundred percent reduction in work hours in each month of that six-month period. Thus, if the Court were to read § 2101(a)(6) so as to permit the application of category (C) to an event expressly contemplated by category (B), there simply would be no need for category (B) since every layoff that exceeds six months also results in a reduction in work hours of more than fifty percent in each month of a six-month period. Additionally, as Ainsworth notes, under USW's reading of the statute, a layoff would constitute an employment loss under category (C) the moment it exceeds five and one-half months because, at that point, the employee would have experienced a reduction in work hours of more than fifty percent in each month of a six-month period. Had Congress intended the WARN Act to operate in such a fashion, there would have been no need to distinguish between the circumstances implicating category (B) and those implicating category (C).

USW argues that the fact that Ainsworth made WARN payments to certain employees who were similarly situated to the nine primary claimants shows that at one time, Ainsworth agreed with USW regarding the interpretation of § 2101(a)(6). To the extent that USW's argument indicates that Ainsworth has apparently changed its position with regard to how to determine an employment loss under § 2101(a)(6), the Court does not believe that this justifies violating a fundamental principle of statutory construction. Because the action taken by Ainsworth on September 22, 2006, was a layoff and not a reduction in hours, the Court concludes that category (C) of § 2101(a)(6) is inapplicable.

In sum, the nine primary claimants did not suffer an employment loss as that term is defined in § 2101(a)(6). Therefore, any failure by Ainsworth to provide notice (or payment in

lieu thereof) to the nine primary claimants did not constitute a violation of the WARN Act.

**C.      The 117 Employees Who Have Already Received WARN Payments**

Ainsworth has issued WARN payments to 117 employees of the 130 employees laid off on September 22, 2006.  USW argues that it is entitled to an award of interest on these payments "from the date the WARN notice should have been provided or on or before September 22, 2006[,] until the date payment was actually made."  Pls.' Mem. in Supp. of Mot. for Summ. J. at 16.  Ainsworth argues that USW's Complaint "provided no indication that it intended to seek such 'an award of interest'" and, as such, "the Court should decline to entertain [USW's] newly-minted request."  Def.'s Mem. in Opposition to Pls.' Mot. for Summ. J. at 19.  In response, USW maintains that the claim for interest was sufficiently pleaded in its Complaint.

Pleadings are required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  "The essential function of notice pleading is to give the opposing party fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved."  N. States Power Co. v. Fed. Transit Admin., 358 F.3d 1050, 1056-57 (8th Cir. 2004).  After reviewing the Complaint, the Court finds that USW failed to provide fair notice that it was asserting a claim for interest on the WARN payments to the 117 employees.  The Complaint clearly asserts USW is seeking relief for the nine primary claimants who had not received a WARN payment.  Nowhere in the Complaint, however, does USW provide any indication that it was claiming interest specifically on the WARN payments that had already been issued as opposed to interest on a judgment for the nine primary claimants should a judgment be granted to them.  The Court declines, therefore, to consider USW's claim for interest on the WARN payments that have already been issued to the

117 employees.[9] See id. at 1057 (holding that while the pleading requirements under the Federal Rules of Civil Procedure are "relatively permissive, they do not entitle parties to manufacture claims, which were not pled, late into the litigation"); Rodgers v. City of Des Moines, 435 F.3d 904, 909-10 (8th Cir. 2006) (holding that the district court properly refused to consider claims that the defendant violated the Family Medical Leave Act in 2004 and 2005 when the complaint was confined to alleging a violation in 2002).

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Ainsworth's Motion for Summary Judgment [Docket No. 18] is **GRANTED** and USW's Motion for Summary Judgment [Docket No. 23] is denied.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

BY THE COURT:

    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: November 10, 2008.

---

[9] This conclusion is reinforced by USW's Statement of the Case [Docket No. 7] at 3, where it clarifies the specific damages being sought in this action: "The USW seeks to recover 60 days wages and benefit for all aggrieved employees who suffered an employment loss due to the mass layoff of September 22, 2006, who have not yet received a WARN payment." (Emphasis added.)